Good morning, Your Honor. Mr. Farrell. May it please the Court, my name is Richard Farrell. I'm representing the appellant, Mr. O'Leary and his company. I'd like to first say this may be the most interesting courtroom I've ever been in so far as architecturally here throughout any circuit. Reminds me of the Domenici Library, but quite interesting. Judge Cradlebaum said a moment ago in the prior case there was something weird. Well, there's something weird in this case, too. A first protective under their appraisal policy had the right to deny the award. Instead of denying the award and simply proceeding, what we've spent is hundreds of thousands of dollars in legal fees, expended considerable district court resources and resources of this court, arguing whether or not Mr. O'Leary and the two appraisers should be sued individually and whether first protective had a right to seek to vacate the award, which could only be through the State Arbitration Act, which they say is not applicable to this dispute. So those things are rather weird, why they didn't simply deny the award that was granted. So one of the first issues I want to address is the statement of the issues under the case caption today that appears on the calendar, whether denial of a motion to dismiss based upon arbitral immunity is final and appealable under 28 U.S.C. 1291. That statement of the issues seems to me when I reviewed it, when I first got the calendar, appears to state that Mr. O'Leary has arbitral immunity and whether or not, if that's the case, he has an appellate right here. If Mr. O'Leary, in fact, as stated here, has arbitral immunity, then that immunity is judicial immunity and is absolute. You can argue however you want, but if your reliance is on the way our calendars stated the issues rather than the record and decisions, that's probably not your best tactic. I think the issue is does someone who does an appraisal or does someone who serves as a referee get the same protections as an arbitrator? Are those the same or either under the text or functionally? You can argue however you want, but I'm not sure our calendar is precedent for it. I agree with Your Honor. I just wanted to make sure that that issue was addressed if, in fact, that was on the mind of any party, any of the judges here on the panel. Moving to the appraisal process, that was designed by First Protective unilaterally. As I said a moment ago, they had the right to deny that they simply overlooked and, in fact, misrepresents to the court in their briefs and in the complaint because they never referred to the right to deny. They leave that off of their quotation of the part of the policy in question. With regard to the functionality issue, which forms the basis of the right to appeal, the function performed by Mr. O'Leary is admitted to resolve the dispute. You're also saying you never raised the functionality point before the district court. I don't think that's accurate, Your Honor. The functionality claim was raised before the court, and it was disposed of with regard to the analysis of Dolenko. Dolenko states and incorporates specifically in the common law the functionality test, which represents exactly what Mr. O'Leary was performing here to resolve the dispute. The court disposes of Dolenko, saying it's in apposite to the claims in the case. The Dolenko case was directly related and controlling of common law in North Carolina because that's the only case and the latest case analyzed by the district court, the only case that reviews the functionality test and simply denies it as being in apposite. It is not in apposite. There's no dispute that Mr. O'Leary resolved the dispute exactly the way he was instructed to or required to under the terms of First Protective's policy. He performed that full function undisputedly. Counsel, what do you do with PHC versus North Carolina Farm Bureau Mutual Insurance Company? It seems to be an appraisal process very similar to this, and it seems to pretty explicitly say that none of the persons determining the amount of the loss, which is what I understand to be the subject of what's done here, are referred to as arbitrators, nor are the provisions of the Uniform Arbitration Act even obliquely mentioned. It seems like that's real close to our case. Am I missing something about how it compares? I believe so, Your Honor. PHC was decided before Dolenko. There's no claim that functionality was ever raised in PHC. But aren't they talking? They may not be using the word functionality, fair enough, but it seems like they're talking about it in functionality-related terms. What are they actually doing? And it seems like what they're saying there is if you're determining the amount of a loss, that's one thing. It's not the same function as an arbitrator who's resolving an overall dispute. And in PHC, they never reviewed the functionality test. The functionality test of Burns v. Reed, which states both in the majority opinion and in the concurring opinion what the functionality test is, never considered in PHC. Dolenko was determined after PHC, reviews explicitly the functionality test, and incorporates the terms that says that a person performing the function of resolving a dispute is protected pursuant to immunity. And your position has to be, and sounds like it is, that you think that language encompasses even the, not the overall dispute as to who wins or loses, but the financial amount of the loss, that that's enough? That's your argument, right? Well, I'll say yes, further stating in response to that, O'Leary did determine the amount. He performed that function. There's nothing that I could determine existed in PHC that reviewed the function, nor analyzed the function. Dolenko did. Dolenko incorporated Burns. I would say with Burns, Burns in the majority opinion goes back historically into where immunity, judicial absolute immunity, attaches in any judicial process. There's no limitation in Burns, nor in Dolenko, with regard to the terminology arbitration agreement, arbitrator, umpire, referee. It's the function alone. If we don't stay away from, if we consider these terminology issues, then we are simply saying that any commercial entity and the entire insurance industry can simply say, you're an umpire, not an arbitrator, okay? That would wholly undermine the legitimacy of the whole process that First Protective says is credible. There's no credibility to a process in which the arbitrator or the umpire or the person making the function of fulfilling the obligation under First Protective's own policy. There's no protection that they provide. We would get to exactly, well, I don't want to say exactly, a similar argument of, is each member here subject to impeachment? What would that do? That would be wholly undermining the judicial process. O'Leary did not get involved. No one would get involved in any of these functional processes if they could be individually sued. These gentlemen, the appraiser and the appraiser for First Protective, as well as O'Leary, are essentially bankrupt now. They've been involved in hundreds of hours, thousands of hours of legal representation. Is that the policy that was put into place by First Protective that would not be credible at all and that would be approved by this court? As far as I know, this is actually an issue of first impression. Are people serving the function of dispute resolution immune or aren't they? People who are out there who are potential umpires. Sometimes things are matters of first impression because no other court has seen to adopt your position. I don't think – I'm not aware of it ever being considered. That's why I'm saying it's a matter of first impression. There are reasons it hasn't been considered and that is because no one has ever considered individuals in the situation as your client to be arbitrators. That's just for starters. They seem to be, as far as I can tell, more akin to insurance adjusters than they are to arbitrators and the fact that they determine the amount of loss doesn't mean that they're necessarily arbitrators. They haven't gone through the arbitrator. Most of them at least go through a very formal process and it's quite an intensive vetting process. Then you pile on top of that – I think it's reluctant to expand the collateral order doctrine too much because we're going to be nibbled to death by piecemeal appeals. In this case, if I'm going to vote to expand the collateral order doctrine to this, I would expect the North Carolina courts to tell me that hey, these folks are full-fledged arbitrators and they have arbitral immunity under North Carolina law and it's an immunity from suit as well as an immunity from liability and I don't see any of that. I don't see that coming out of North Carolina, okay? Well, it appears that the D'Alenco court decided that anyone serving the function of resolving a private dispute as a private citizen is entitled to that immunity and that's exactly what Burns v. Reed said. So either we adopt the opinion of Burns v. Reed which says what O'Leary claims and which D'Alenco adopts expressly in its opinion as the common law of North Carolina or we don't. That's obviously the decision of this panel. But the point is there are all sorts of dispute adjudicators that aren't full-scale arbitrators. Insurance adjusters are one but, you know, whenever you make a claim, let's say, to health insurance and you want reimbursement under the health insurance policy. Well, some individual somewhere is determining the amount of loss but that doesn't make them an arbitrator. They're dispute resolvers throughout our society. They're in many companies. They're all over the place and if we have the idea that they're all mini-arbitrators and that every adjustment that they make is or that if they're granted denied immunity, arbitral immunity for one thing or another, I just think we're going to be nibbled to death by these interlocutory appeals. And there's something to be said for leaving matters in the district court until it's all wrapped up. This seems to erode that. May I respond, Your Honor? I know I'm pretty close to out of time. Would you like to respond in your rebuttal or would you like to respond right now? I'd like to respond right now because it's Your Honor's comment to me that I'm responding to rather than opposing counsel. Go ahead. I understand your leeriness. Primarily what you're alluding to is internal administrative decisions, not decisions that occur pursuant to a prescribed dispute resolution process. This is a decision made by an individual that has been appointed as an individual to resolve the dispute. I believe what Your Honor is referring to are internal administrative decisions that don't go by a dispute resolution process that was established by the insurance company. You're leading us down a trail where we're going to say, well, this person's an arbitrator, that person's not, this person's an arbitrator, that person is not, and then, you know, that's going to become a point of contention in collateral order doctrine appeals and it makes sense to stay in some lanes and hold somebody where North Carolina law says only there's an immunity from liability and not from suit and where North Carolina law has not signaled to us that this is even an arbitrator. I don't know why we'd be sort of launching out on our own, but you've got some rebuttal time and you can make your points at that point. Thank you. If my colleagues have questions for you now, I'm happy to see Marvin. Thank you, Your Honors. Thank you. May it please the Court, my name is Mihaela Cabrera and I represent First Protective Insurance Company. Your Honor, respectfully, this court does not have jurisdiction under the collateral order doctrine to review the district court's denial of the arbitral immunity under the North Carolina Arbitration Act to the appellants in this case. And I want to point out and I want to walk the Court, which I'm sure the Court is aware of, that all the steps that are required to be met in order for an interlocutory order to be reviewable on immediately under the collateral order doctrine. And the first one and the second one are kind of not at issue here because they require that the order conclusively determine the issue, which that has happened here, that the order resolves an important issue completely separate from the merits. We agree that that's separate from the merits. But the third prong that has to be met is the problem here, and that is that the order is effectively unreviewable later on in the case from the final judgment. And here is the main problem with this particular order and with the appellant's argument because although neither the Supreme Court nor this Court have addressed the issue whether arbitral immunity, an order denying arbitral immunity, is reviewable immediately, further cases that have narrowed even more the collateral doctrine, collateral order doctrine, after the Cohen decision indicate that this would not qualify as an immediate appeal. What if it was an arbitrator, a plain and simple arbitrator? No question about it like there is here. If a plain and simple arbitrator is saying under North Carolina law, statute and case law, I have absolute immunity, not liability, not immunity from liability, but immunity from suit. Would we have jurisdiction? Your Honor, I still think that the Court would not have jurisdiction because it's not what the arbitrator alleges, but it's what the statute supports. And going to the very language of the Arbitration Act, I want to walk the Court through the steps and through the language of the Act that clearly provides for immunity from civil liability solely and not from. I want to direct the Court's attention to subsection 1-56914D of the Act that, for example, addresses the immunity of an arbitrator pertaining to discovery. So the Act specifically says that in judicial or administrative or similar proceeding, an arbitrator is not competent to testify and shall not be required to produce records and so forth the same way as a judge of this Court and this State would not be required to do so unless, and here is an exception that we believe applies even here, unless this subsection shall not apply to a hearing on a motion to vacate an award under subsection 1-56923 if the movement makes a prima facie showing that a grant for vacating the award exists. This is exactly what happened here, Your Honor, and my opponent keeps claiming that we had the option to deny the award. We had the option to deny coverage under the policy after the award was issued. We did not pay the award. We sought a declaratory judgment action to vacate that award, so that's the proceeding. And the allegations in the complaint make a prima facie case that there is a problem with the appraisal award like under the Arbitration Act here because we alleged in the complaint that the O'Leary and the O'Leary appellants, they were not impartial. Mr. O'Leary signed that document that says I am going to be strictly impartial here, and he in fact was acting as a consultant on a different claim by the same insured collaborating with the insured's own appraiser and public adjuster. So that's the ultimate allegation of lack of impartiality and bias and improper conduct because nobody disclosed that. And ultimately he came back with an award that was over a million dollars that was four times the amount initially submitted by the insured. So these allegations meet that kind of requirement even under the Arbitration Act. So if I could interrupt you counsel, what if there was a suit against a North Carolina judge and they sought to appeal saying they were absolutely immune? Would we have jurisdiction to hear that? Yes, Your Honor, that is very different. And I think if Your Honor looks at the language of the opinion in Mitchell v. Forsythe, and we cited to that in our motion to dismiss, the court in that case points out to the fact that judges have absolute immunity. And that means absolute immunity, you are immune from suit. But the court further notes that there is a very different rationale behind the absolute immunity granted to judges as opposed to the attorney general, which was at issue in that particular case. Because the judicial process is subject to certain procedural safeguards. A judge cannot abuse that immunity because there are procedural rules that the judge must abide for. There are appellate options and avenues for the court to do so. So that's why it's a completely different process. And even arbitrators, there are quasi-judicial proceedings. The rules of evidence apply. Attorneys come and present evidence on behalf of their clients in an appraisal process. It's two appraisers representing the two parties. I get your argument. I understand your argument that Mr. O'Leary is not an arbitrator. I appreciate that. I wonder if you're right about the hypothetical that an arbitrator could not appeal saying they have absolute immunity. I understand your position. And I do have, if Your Honor allows me to finish that answer, I have other provisions in the Arbitration Act, North Carolina Arbitration Act, that support our contention that an arbitrator does not have absolute immunity because subsection A- Kate, do you have a North Carolina state law case that says that? No, but it's the language of the statute that we are going- You're welcome to repeat that. I read those arguments in the briefs, so I appreciate them. I understand, but you're welcome to make the point. I'm not trying to discourage you. The statute says that they're immune from civil liability, and then they provide for attorney's fees at the end of the case for an arbitrator if the arbitrator is found to be immune from civil liability. So that's where our argument comes from, basically, and that's why we are arguing that. In addition, Your Honors, what happened in this case indicates that the Oliari appellants never even raised the immunity from suit until they responded to First Protective's motion to dismiss the appeal for lack of jurisdiction. Nowhere did they move to dismiss. They didn't move to dismiss the complaint saying we are immune from suit. They didn't file in their answer and affirmative defenses. They didn't reference immunity whatsoever, not even arbitral immunity from civil liability. They didn't reference immunity from suit in their answer and affirmative defenses either. It took them a year, over a year, a year and a month, to file their motion for judgment on the pleadings and argue that they are immune from civil liability. So the first time the word comes up is in their memorandum in support of their motion. It's document entry number 61, and that's where they reference immunity from civil liability. And then even on appeal, in their opening brief, they never mentioned that they are immune from lawsuit. The words are immunity, they are immune under the Arbitration Act, and then immune from the claims by First Protective. So those are the arguments. In that respect, we would practically argue that they waived even that immunity from suit because they engaged in litigation for over a year. They produced some discovery, quite extensive, in response to discovery requests. You raised that argument in your brief. Sorry? I said you made that argument in your brief. I believe we made that argument in the motion to dismiss, Your Honor, because in the brief we just adopted that. Right, right. Are there any arguments that you have to make that you feel that you didn't make in your brief? I just want to point out, and probably we made in the brief, we made all the arguments, but I just wanted to point out briefly on the Delanco opinion. That does not address an appraisal proceeding, and that was issued before the legislature, North Carolina legislature, has adopted the act when the act became effective in 2004. The court even said in that opinion in a footnote that that's why the court looked at the functionality test. In addition, in that case, the parties agreed to submit their dispute to an arbitrator. It was an arbitration proceeding. Is there anything further, counsel? No, Your Honor, unless you have more questions. Thank you very much. Thank you very much. Mr. Farrell. Thank you, Your Honor. So far as the citation by opposing counsel of Section 14D regarding Mr. O'Leary being required to testify or any person providing a function of dispute resolution being required to testify under the act, he can only be required to testify with regard to a motion to vacate. It has no effect on his immunity. He remains completely immune pursuant to judicial immunity, even if there is some claim that he may have acted out of the course of what he was required to do. That's if he's an arbitrator. I don't believe that the functionality test has anything to do with terminology. If it had to do with terminology— Counsel, you're referring to the North Carolina Arbitration Act. I am. And what I'm saying is that North Carolina common law is pursuant to D'Alenco, a party providing the function of the resolution of dispute, which First Protective defined as the role of Mr. O'Leary in the process, in their own contract. You know, that functionality test, counsel, that you're suggesting is one of the most litigious I've heard. We could be debating forever whether somebody functioned in this sense or whether somebody functioned in that sense, and what are the different criteria for the functionality as an arbitrator, and when is it met and when it's not, and when we depart from the relatively clear contours of the collateral doctrine into the vague land of functionality tests. There's enough litigiousness around the collateral order doctrine as it is, and to add a functionality test to the existing litigiousness just strikes me as a very bad step. Here, the issue is undisputed. The contract says expressly Mr. O'Leary was responsible for resolving the dispute. That is the function. The function is defined by Burns v. Reed by the Supreme Court and adopted by D'Alenco. The court is obviously free to ignore that standard. However, our position is it is defined in their own contract. There is no factual definition that the court has to impose. He was obligated to resolve the dispute. Beyond that, unless O'Leary— There are all sorts of contracts that have dispute resolution procedures and that have all sorts of mechanisms set up for remedial phase, but that doesn't mean that they've established an arbitrator or the process for arbitration. This one did. This contract does. But there are many contracts that have a provision as to how amounts of loss will be negotiated or what have you, but that doesn't go around establishing little arbitrators here and there. That's the problem. Well, Mr. O'Leary was not a little arbitrator. He was responsible for determining the dispute. Did First Protective ever say to him that he could be individually sued? No. Did they have the right to deny the award? Yes. Why did they not deny the award? For one reason. There was one reason and one reason alone. Vexatiousness and vindictiveness. They didn't have to sue any of these people. They took their process to resolve a dispute, that process they contractually provided for, and they turned it into a weapon. You can raise that on appeal. You don't have to raise that in a collateral order appeal. You can raise that when you bring the irregular appeal. Your Honor knows that the case law is replete with decisions that say that immunity is of the utmost importance to the process of dispute resolution. You can't wait on that. Counsel, that's part of the point. There are immunities and there are immunities, and one of the points that the opposing side makes is that there are differences between immunities from liability and immunities from suit. And the immunity that you're talking about is an immunity from liability such as it is, but that can be raised in the normal course of litigation. It doesn't have to come up here. It can be raised in the normal course of a lawsuit, and then if you're dissatisfied with it, you can include that among the claims you bring on appeal. Every disappointment that a litigator encounters in the course of a lawsuit doesn't result in an interlocutory appeal. We have to . . . I do not want this court to be devoured by piecemeal appeals. It has to do with immunity, which is paramount to the process of an honest judicial procedure. If the court doesn't wish to enforce that, which would be consistent, I submit to this court's prior historic opinions with regard to immunity being a most important issue for the judicial process required to be determined at the outset, then that's a decision that needs to be made at that end of the discussion, not by me. All right. Thank you, sir. Thank you, Your Honor. We appreciate it. We will adjourn court and head down and greet counsel. I want to thank our courtroom deputy. Ms. Hancock, you did a very fine job. Thank you so much. This honorable court meeting is adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Roger L. Gregory, A. Marvin Quattlebaum Jr.